48

Hillsborough
No. 7854

### CARL H. SMITH

v.

### BENJAMIN C. ADAMS, COMMISSIONER, DEPARTMENT OF EMPLOYMENT SECURITY THE STATE OF NEW HAMPSHIRE AND CHICOPEE MANUFACTURING COMPANY (JOHNSON AND JOHNSON)

January 23, 1978

*New Hampshire Legal Assistance,* of Manchester (*Ellen J. Musinsky* orally), for the plaintiff.

*Edward F. Smith, Andre J. Barbeau, Michael M. Black* and *Paul V. Kenneally,* of Concord (*Mr. Barbeau* orally), for the New Hampshire Department of Employment Security.

Bois, J.   This is an unemployment compensation appeal pursuant to RSA 282:5. On October 5, 1974, the plaintiff's pregnant wife began experiencing dizzy spells and nausea. Her physician suggested she remain in bed and have someone stay at home with her. Plaintiff, at that time employed at defendant Chicopee Manufacturing Company, was unable to find anyone to attend to his wife and infant son. After checking with several friends, he called his sister, who also was unavailable but who agreed to notify plaintiff's employer that he would not be at work.

The sister testified she called Chicopee three times on the afternoon of October 7, 1974. The first and second calls were unsuccessful; on the third call, she allegedly asked the switchboard operator to give the plaintiff's supervisor the message that plaintiff's wife was sick and that unless the company was notified to the contrary he would probably not be at work the rest of the week. For reasons unknown, this message was not relayed to the appropriate persons.

On October 9, 1974, the plaintiff called Chicopee to tell them he would be in the following day. Upon reaching his supervisor, the plaintiff was told that he no longer worked there because the company had not received any explanation for his absence and so assumed that he had voluntarily quit. On October 11, 1974, when the plaintiff went to Chicopee to pick up his paycheck, the switchboard operator allegedly told him that she was the one who received his sister's call and that she was sorry to hear that his wife was sick.

Plaintiff thereafter applied for unemployment benefits. The department of employment security mailed a request-for-information form to the employer, to which the company responded in part by stating: "Vol[untary] quit. 3 days unexplained absence." On December 11, 1974, the department denied benefits, finding the cause of plaintiff's discharge to be excessive absenteeism, which it considered "misconduct connected with his work . . . ." RSA 282:4 A(2) (Supp. 1975).

On February 18, 1975, a de novo hearing before the appeal tribunal of the department of employment security was held pursuant to RSA 282:5 C(4). Plaintiff and his sister testified to the circumstances surrounding his absence and the telephone calls to his employer. A Mr. Paye, industrial relations manager for Chicopee, testified under oath that the reason the plaintiff's employment was terminated was that the company deemed the plaintiff to have

voluntarily quit when he was absent for three days without explanation.

The appeal tribunal found the material facts of the plaintiff's claim to be as follows:

> The claimant was rehired as a cloth doffer on August 21, 1974 and was discharged on October 9, 1974 because of excessive absenteeism. The claimant was absent seven times, four for illnesses and three unknown. The claimant remained home from work because his wife was ill. He sent in a message advising his employer that he would be out the rest of that week. When he contacted the employer on the 9th he was advised that he had been discharged.

> The Appeal Tribunal, after a review of all of the records and testimony, is of the opinion that the claimant was discharged when he failed to attend work as required by his employer, and this constitutes misconduct connected with his work.

On the basis of this finding, the appeal tribunal ruled that the plaintiff was discharged for misconduct connected with his work and therefore disqualified from receiving benefits.

Plaintiff appealed this decision to the superior court under RSA 282:5 G(3). A de novo trial was held on February 24, 1976. The Court (King, J.) granted and denied certain of plaintiff's requests for findings and rulings, and affirmed the disqualification from benefits. Plaintiff's motion for reconsideration was denied. In the instant appeal, plaintiff challenges the court's denial of certain proposed findings of fact and the court's refusal to grant him benefits. He contends that he was not discharged for misconduct connected with his work and that he is entitled to benefits for fifteen weeks in the amount of $1,057.

We hold that, for the reasons set out below, the denial of benefits to the plaintiff was improper and is hereby reversed.

■■ At both the appeal tribunal hearing and the superior court trial, much testimony was introduced to the effect that the plaintiff had a history of absenteeism with his employers. This evidence was immaterial. The employer's stated reason for discharging the plaintiff was the alleged failure to notify the employer about the absence from October 7 to October 9, 1974. Nowhere did the employer assert that the discharge was occasioned

by excessive absenteeism of the plaintiff. It is true that RSA 282:4 A(2) (Supp. 1975) provides that an individual is to be disqualified for benefits if "[h]e was discharged for misconduct connected with his work, *if so found by the commissioner*." (Emphasis added.) However, the commissioner's inquiry into possible misconduct may not be conducted in disregard of the stated and conceded reason for the termination of an employment relationship.

In *Unemployment Compensation Board of Review v. Kerstetter*, 21 Pa. Commw. Ct. 260, 344 A.2d 743 (1975), the court faced a situation in which an employee was discharged because of lateness on three specified days. The employee was denied benefits because she was found to be disqualified; this denial was upheld by the Pennsylvania Unemployment Compensation Board of Review. On appeal, the court reversed, holding that it was improper for the board to have relied in part on the employee's history of latenesses: "If the employer did not consider other latenesses as relevant to the reasons for her discharge, neither may the Board." *Id.* at 263, 344 A.2d at 744; *accord, Silva v. Nelson*, 31 Cal. App. 3d 136, 140–41, 106 Cal. Rptr. 908, 910 (Ct. App. 1973); *Green v. District Unemployment Compensation Board*, 346 A.2d 252, 256–57 (D.C. 1975); *Hawkins v. Leach*, 115 Ohio App. 259, 270, 185 N.E.2d 36, 44 (1961); Kempfer, *Disqualifications for Voluntary Leaving and Misconduct*, 55 Yale L.J. 147, 160–62 (1945).

RSA 282:4 A(2) (Supp. 1975) does give the department of employment security some discretion to determine whether an employment relationship was terminated because of employee misconduct. We hold, however, that under the facts of the instant case the department cannot deny benefits to the plaintiff on the basis of the misconduct disqualification since the employer has not stated that the employee's past absences were a factor in the termination, but rather has stated that the termination was based only on a "voluntary quit."

We therefore remand to the superior court for the awarding of the fifteen-weeks' benefits claimed herein.

*Remanded.*

LAMPRON, J., did not sit; BROCK, J., sat by special assignment pursuant to RSA 490:3; the others concurred.